Western Contractors Supply Company, Plaintiff, v. T. P. Dowdle Company, Defendant-Appellee, Stone and Webster Engineering Company, Third Party-Appellant.

**Gen. No. 45,573.**

Opinion filed January 30, 1952. Released for publication April 2, 1952.

OTTO KERNER, JR., United States Attorney, of Chicago, for appellant; JOHN PETER LULINSKI, and MELVIN L. KLAFTER, both of Chicago, of counsel.

JOHN J. DOWDLE, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action in the municipal court of Chicago against defendant Dowdle, to recover $415.11 for machinery sold and delivered on October 29, 1941, and November 24, 1941. Dowdle, under Rule 25 of the municipal court, brought in defendant Stone & Webster as a third-party defendant. Upon a hearing before the court, without a jury, the court entered

judgment against the third-party defendant for $5,200, from which defendant Stone & Webster appeals.

The cause was here previously on appeal (333 Ill. App. 653). We reversed the judgment in favor of Dowdle in a like amount.

The amended complaint, upon which the cause was tried, alleged that on October 13, 1941, the Dowdle Company was the owner and in possession of one AD 3 Diaphragm Pump mounted on pneumatic tires, Serial No. A–161950, together with 15 feet of 3-inch suction hose with nipples, 50 feet of 3-inch discharge hose, and also a 2-inch Homelite pump, Serial No. 22154, with 20 feet of 2-inch suction hose with nipples and 50 feet of 2-inch mill hose with couplings; that defendant Stone & Webster borrowed and used same and agreed to pay a fair and reasonable rental of $104.67 per month therefor; that as a result it was indebted to Dowdle in the amount of $5,338.17; and that Stone & Webster also appropriated one tarpaulin valued at $55.

On November 15, 1948, Dowdle filed an amendment to the amended statement of claim, alleging that the title to the pumps and equipment on October 13, 1951, was that of "Lessee Bailee."

The amount of the judgment for Dowdle was computed upon the basis of the reasonable rental value of the pumps in question, namely, $104 per month, upon a fifty-month period between Dowdle's alleged loss of the pumps and when they were made available and delivered to Dowdle.

With very slight difference, the evidence in the record before us upon this appeal is substantially the same we considered on the prior appeal. The record discloses the following facts. Defendant Stone & Webster was a prime contractor for the United States Government war project involving the Kankakee Ordnance Works, from September 21, 1940 to July 15, 1944. The project covered an area of fifty-eight and one-half square miles. It was a $70,000,000 to $80,000,000 pro-

19

ject. Eighty-seven subcontractors were employed upon this project, one of whom was the Dowdle Company. Dowdle was to do some sewage and drain work. The two pumps in question will be referred to as the "Novo" pump and the "Homelite" pump. The pumps were brought to the project about September 8, 1941, by Dowdle and used by it in its contract work. Dowdle claims that during the week end of October 12 the pumps were missing; that it was unable to find them; that the loss was reported to defendant Stone & Webster, who, after search and investigation, was unable to locate them.

Thomas P. Dowdle testified that the Dowdle Company did not enter into a contract to rent any pumps to the Stone & Webster Engineering Company; that he did not know whether it was Stone & Webster or the Army who checked the equipment in and out of the Kankakee Ordnance Works.

The witness Brady, for Dowdle, testified that during 1941 he was employed by the Dowdle Company at the Kankakee Ordnance project; that his duties were that of material clerk in charge of equipment; that on October 15, 1941, he notified defendant Stone & Webster of the loss and the numbers of the pumps; that about ten days later he saw one of these pumps in the repair department of Stone & Webster and identified it by the manufacturer's serial number; that there was a stencil number "OE–331" on said pump, which stencil was used on all of Stone & Webster's equipment; that it was the "Novo" pump he found in the repair department at about 11:00 a. m.; that he went to get a truck, and when he returned the pump was gone; that he did not know who removed the pump prior to his return for it, nor did he know who brought it there; that he did not see the tarpaulin at any time after it was missing; and that no one other than Stone & Webster was allowed to use the repair shop in which he saw the

20

"Novo" pump. Dowdle and Brady were the only witnesses for Dowdle.

The witness Wardell, for defendant Stone & Webster, testified that he was the civil engineer for defendant Stone & Webster on the project in question; that Stone & Webster did not check its subcontractors' properties in and out of the project; that the two pumps in question were not checked in and out by Stone & Webster; that there was no contract between Stone & Webster and Dowdle for the rental of any pumps; that the initials "OE" indicated the property was owned by the United States Government and used by Stone & Webster; that the initials "RE" on the equipment indicated rented equipment used by Stone & Webster; that the repair shop on the project was maintained by Stone & Webster, and the government equipment was therein repaired; that the equipment of no one else was repaired in said repair shop; that Dowdle was in control of the maintenance and repair of its own equipment; that Stone & Webster did not have a piece of equipment marked "OE-331"; that no such number had been assigned to Stone & Webster; that he knew that other prime contractors and subcontractors on the project, working near the site where the Dowdle Company was working, had use for such pumps; that when Stone & Webster finished its use of the equipment marked "OE" and "RE", it notified the Government, and the latter directed the disposition of same to one of its governmental agencies; that during the months of April and May 1941, approximately fifty to one hundred subcontractors were working on the project; that Stone & Webster never used "Homelite" equipment "for pumping"; and that Stone & Webster did not take equipment off the said project at any time.

The witness Miner, for defendant Stone & Webster, testified that he was employed by the Government upon this project as an accountant property officer at the

21

head of the property section on this project; that he talked with Mr. Dowdle with reference to the two pumps and took him to a warehouse and showed him the two pumps; that he inspected them with Mr. Dowdle; that the pumps had their original paint on them; that "OE–331" did not appear on either of the pumps; that when "OE" appeared on government property or equipment, it meant that it was government owned; that the first time he saw the pumps was in January 1946, and the pumps then had the original paint job; that he last saw them in 1948; that he never saw "OE" stamped on the pumps; that the first time the pumps came to his attention was when they were picked up in the termination inventory of the Dupont contract and on the joint inventories taken by the Dupont and United States Rubber companies, two of the contractors working on the project, and the government representatives, on April 1, 1944; that the pumps were then picked up on government inventory books on April 1, 1944; that the government records disclosed that the pumps were received by the Government from the Dupont company; that "OE" numbers were put on the equipment by a corps of government engineers; that the equipment used by Stone & Webster was furnished to it by the Government; that when the Dupont company came in on the project, Stone & Webster inventoried the equipment to it; that the inventory did not contain the two pumps and they never appeared on the Dupont inventory to the Government; that when property is not recorded or claimed on the project, the same is picked up in the government inventory; that in this particular instance the property was accepted by the Government for accountability, custody and responsibility, as a result of the joint inventory taken by the Government, Dupont and United States Rubber; that the pumps were listed on the inventory taken at the time the Dupont company

22

left; that the Government issued the pumps again to the United States Rubber Company for its use and operation.

The foregoing was practically all of the material testimony introduced upon the trial.

██ There is not one scintilla of evidence that Stone & Webster "borrowed and used" the pumps and equipment in question and "agreed to pay a fair and reasonable rental of $104.67 per month," as alleged in Dowdle's statement of claim. There is no evidence that Stone & Webster used either of the pumps in question. As already pointed out, the witness Dowdle admitted that the Dowdle Company did not enter into a contract to rent any pumps to Stone & Webster. The meager testimony of the witness Brady that he saw the "Novo" pump on the project in the repair shop of Stone & Webster after its reported loss, and that when he returned with a truck to get it, it was again missing, furnishes no proof as to who put the pump in the repair shop, or that Stone & Webster had ever used it. As against this meager testimony is the positive testimony of the witnesses Wardell and Miner, already pointed out.

Dowdle, in its brief, referring to the two pumps in question and the fact that the "Novo" pump was found in the repair shop of Stone & Webster, says: "The fair presumption is that the third party defendant also had and used the Homelite pump." Liability cannot be predicated upon any such presumption. Upon the former appeal one of the reasons for reversing the judgment was that the amount of the judgment was based on the rental of the two pumps with no evidence of the rental value of each pump. Since there was no allocation as to each pump, and the record being entirely barren of any evidence of possession or use of the "Homelite" pump, the judgment could not be sustained.

23

The record before us now is no different than it was on the former appeal, and the same reason for reversal of the judgment must follow. In our former appeal, we also said:

"We believe, moreover, that the finding of possession and use, especially the latter, of the Novo pump, is against the manifest weight of the evidence presented by defendant and to some extent by plaintiff."

The reasonable inference, after remandment of the case to the lower court for a new trial, is that plaintiff could not produce any further evidence upon the second trial, because it produced no additional evidence that would change our conclusion reached on the former appeal.

Defendant Stone & Webster challenges the right of Dowdle to make it a third-party defendant in the instant action brought by plaintiff against Dowdle. Dowdle seeks to justify the procedure under Rule 25 of the municipal court. That rule provides:

"A defendant, upon giving notice to the plaintiff, may move for leave to serve a third-party-claim upon a person not a party to the action who is or may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claim against the defendant. . . ."

No authority in Illinois construing this rule has been cited by either side, and our independent search has not revealed any except as presently noted. It is clear to us this rule only permits bringing in a third party "who is or may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claim against the defendant." Many illustrations may be cited where third-party defendants could be brought in because they are answerable for the very claim made by plaintiff either to the plaintiff or defendant, such as the one involved in *Chicago & N. W. Ry. v. Sun-Ripe*

*Products,* 330 Ill. App. 291, where the defendant claimed that another, not a party to the suit, should be held answerable for the freight charges claimed by the railroad.

■ Dowdle's statement of claim against Stone & Webster presents a different cause of action, separate and distinct from that alleged by plaintiff against Dowdle, and they bear no relationship to each other. Moreover, the evidence for defendant at best discloses that Dowdle lost the two pumps in question, and one of them was found in the repair shop of Stone & Webster. There being no previous contractual relation between Dowdle and Stone & Webster, the theory of recovery, if any, would be the wrongful conversion of the pumps by Stone & Webster to its own use, of which there was no evidence. Such a theory of recovery bears no resemblance to the claim made by plaintiff against Dowdle.

It is apparent that Stone & Webster is in no way liable to plaintiff or to Dowdle for "all or part" of the claim made by plaintiff against Dowdle and, therefore, not within Rule 25. The objection to the procedure under Rule 25 was seasonably made by Stone & Webster by proper motion to dismiss, which the court overruled. In this the trial court erred. It should have dismissed Stone & Webster out of the case.

For the foregoing reasons the judgment of the municipal court of Chicago is reversed.

*Reversed.*

KILEY, P. J. and LEWE, J., concur.